Good morning Your Honors, Cherise Pratt for the Defendant's Appellants. May it please the Court. This case is about what process is due. 8 U.S.C. § 1226A provides that the Attorney General, after the arrest of an alien, may continue to detain, may release, on bond or with conditions, or on conditional parole. Under Step 1 of Chevron, Congress has spoken. There is no presumption of release from detention during the removal period. A bond is completely discretionary, with a caveat that if it is set, it must be a minimum of $1,500. The statute is silent on how the agency is to exercise its authority. How is a policy choice? The agency is the authoritative interpreter with the expertise to create policy guidance, identify factors, and implement. The agency is mindful of all the variables and has the flexibility to weigh the factors. That is the process that is due. Congress did not create the process. The agency filled a gap-filling role, a policy-filling role. Under Matter of GERA, there is a non-exhaustive list of factors. They are non-exclusive. The IJ is empowered to consider any witnesses, evidence, and testimony that the alien may present. I'm curious. Matter of GERA doesn't include the ability to make bail, right, as a factor? It lists several factors, but it's the non-exhaustive, non-exclusive, it doesn't say ability to make a bond. It doesn't mention it in the list of several non-exhaustive, non-exclusive factors, right? Right. Okay. But, yeah, I guess it's the guidelines that the EOIR follows, that handbook. It does list ability to pay. And says it's not dispositive. Right. Of course it says it's not, but it does list it. So isn't NREGUERA inconsistent with the rules that are promulgated in the immigration judge's handbook? No, they're all guidelines. It's not inconsistent when it provides that they may consider anything. Do you agree that one mentions inability to pay the amount of the bond and the other does not? Right. Matter of GERA does not specifically address ability to pay. Also, I'm curious about something else. We had a hard time finding that handbook because it seems to have been recently taken off the website. That's correct, Your Honor. And why was that? Instead, the EOIR now has a checklist where they, and I think that's only available to the immigration judges, where they have a checklist. And yes. And does the checklist include ability to pay? It says financial assets, and it has some. Speak up. What did it? Yes, it says it has a box for financial assets. Yes. I think Judge Waddell is correct that your statements seem to be somewhat inconsistent. But you do say that in your brief that, let's see if I can find the right page, well, I'd better come back to that. Well, they say that they do consider, and actually you cite several cases that says that you do consider. However, there's several other cases where they expressly did not consider. It seems very inconsistent. In those unpublished cases from- Yes, you say moreover, ability to pay is a factor that already is considered in setting bond. I can give you an example, Your Honor. No, is that correct, that it is considered? Yes, it's implicitly considered. When someone presents evidence, let's say Ms. Hernandez, if she presents evidence that she has no job, that she stays at home, watches her grandchildren, and cleans the home, and her adult children work, and that they're barely able to make their bills. You mean it's considered in some cases and not in others, or it's always considered? It's always implicitly considered. What do you mean implicitly considered? I don't know what that means. Well, when an alien comes before the immigration judge, and under the regulations, they have the burden to establish that they're eligible for release on bond or alternatives. You mean if they present evidence, it will always be considered? Yes, it's considered. If the IJ hears it, it's considered. Now the wait here- No, wait a minute. You mean if the IJ hears something, it will always be considered? Whatever he says, like, I don't like the president, that will be considered in making the determination? Well, talking in the context of factors that are establishing the alien's eligibility for release on bond or alternatives to detention, if the IJ- Is economic condition or indigency always considered in every case? If the alien raises indigency and says he can't afford a bond, of course that's considered. It's heard. Whether it's given more weight than- No, nobody's asking to be given any particular weight. The only question is they're asking that it be considered. That's the issue in the case. And that's within the immigration judge's discretion. Oh, so it doesn't mean- It's not always considered. It's within his discretion to consider it. And that's what Congress provided in the statute. Okay, but that's not what you said in the brief. I apologize. You say it is a factor. Moreover, the ability to pay is a factor that already is considered in setting bond. So it is or it isn't always considered. And that is in the context- Okay, so- Because if that's what you're saying, that it's already considered, then we don't need this case because we could just say, yes, you do it, continue to do it. That's the government's position that we don't need this case because inherently when someone is presenting evidence, you're hearing their employment history, the assets, the financial resources. You hear whether- You don't have to explicitly say what is your ability to pay. Okay, so let me read you from Nelson Salvador Castillo-Cajurra, a 2009 PIA decision. They say, we have considered the Respondent's contentions on appeal. In this regard, we understand the Respondent to argue that because of his limited financial resources, he cannot post the ordered bond amount. However, an alien's ability to pay the bond amount is not a relevant bond determination factor. Rather, the bond amount must be reasonably calculated to ensure the alien's presence at future hearings. So this judge is saying it's not a relevant factor. That means it will not be considered. In that case, in that unpublished decision, in light of all of the other factors that the immigration judge heard, those factors outweighed his ability to pay- He didn't say outweigh. He said it is not considered. Maybe he expressed that in our- And he's not the only judge who has said that. There are a number of cases. In Ray Mario Sandoval Gomez, the BIA says, however, an alien's ability to pay the bond amount is not a relevant bond determination factor. Rather, the bond amount must be reasonably calculated to ensure the alien's presence at future hearings. That sounds like pretty standard language, if it's being used consistently across cases. Oh, those were- But basically what I think the record shows, despite what you're saying and what your blue brief says, is that it's inconsistent. Some times the BIA considers it and sometimes they say it's not a relevant factor, at best. On a case-by-case, individualized determination based on the factors they hear. Based on the factors they hear, it's not a factor they will consider. It's a factor that may be outweighed by other factors. No, not outweighed. Don't keep saying that. That's not what Judge Wadler read you. They said it is not a relevant factor. Yes, and I believe that that was- that's not the government's position, that it's not relevant. But it's what the government does. They pointed to four unpublished cases, some from 2007, 2008. No, this is a later case. Oh, the 2017 one. Okay. Yes. And so under- well, there is a process. If they feel that the IJ abused its discretion and didn't consider it, they can appeal to the BIA, the Board of Immigration Appeals. This is a BIA decision. This is a BIA decision. I mean, so you're saying you can go back to them? Well, I guess we don't believe that that is reflective of what is happening on a widespread basis, Your Honor. You are saying that it is always a factor that is considered. The government's position is it's discretionary, just like every other factor. No factor is mandatory or required. All right. Then it's not always considered as a factor. It's not a factor that must be considered. That's what the case is about. They're saying that this is a factor that must be considered. Yes, and the government disagrees. And you say that's not correct. Correct. It's not correct that it must be considered in every instance. Okay. So it is discretionary. Sometimes you consider it, sometimes you don't consider it. Sometimes other factors outweigh ability to consider. Oh, come on. Please stop telling me what outweighs what. I said what is considered, not what wins. You know the difference between something being considered and something outweighing another factor? Yes. Counsel, if it's – I'm really confused about the government's position because the blue brief does say that it's a factor that's considered. And what's your objection if you're already – what is the government's, not you personally, the government's objection to having an injunction that says you must consider ability to pay if it's already doing that? Okay. The problem is that the plaintiffs are trying to dictate the factors, how it's going to be considered, the weight it's going to be accorded, making one factor. Where does it say the weight to be afforded? Well, if one factor is mandatory required every time and there's nothing else that's required, then that is giving more weight to that factor. Yes, it's a mandatory factor that you must always consider that. And then there are lots of other factors. That's true. No doubt about that. They say that you must always consider that. That's their position, that you must always consider the ability to pay. But it doesn't say what weight you give it. It doesn't say whether it outweighs anything. It just is that that's one factor you must consider. The problem with the plaintiff's approach is that it upsets Congress's statutory scheme that leaves the discretion of the factors to the immigration judge. And actually, detention is not – it's not – I mean, release from detention and release on bond is not a right. Right, if they don't have to release them at all, right? But if they do, if they do determine, if they do make the determination that there's no danger to the community and no worry about a flight risk, and they make that determination, and then their next determination is, okay, so what amount of bond will allow them to be released? Because we've already decided they should be released. And yet, you know, provide reasonable assurance that they're going to return for their hearing. So it's a calculation. But if you don't consider ability to pay at all and just set, you know, high, high bonds, what you're doing is saying you made a determination you're eligible to be released, but we're going to set the bond so high that you never will be. Your Honor, the situation you described where they say they're not a flight risk and not a danger, that's not the situation we have before you. We are talking exclusively about aliens who have been determined to be a flight risk, and in some instances a high flight risk. And what amount of bond will correlate with that risk? You're perfectly free to say because the petitioner is a flight risk, we're not going to give bond. That's not what they're talking about. They're talking about where you have determined that a bond is appropriate. Because the alien presents a flight risk. Because what? Because of the flight risk. Yes, right, okay. Yes. So there's a determination. The person is going to get a bond even though the person's a flight risk. Correct. All right. So we're past that fact. Now we're just up to the point. This is a class of people where it's been determined that they're going to have a bond, and we're only talking about what the amount of the bond should be. All right. And the question is, is it relevant necessarily whether the person's a millionaire or has no money? Is that a factor that must be taken into account? If the person is indigent, for instance, you might be willing to have a lower bond than if a person's a millionaire. I mean, it seems so obvious. Right. And, okay, Matthews v. Eldredge only requires notice, opportunity to be heard, and a full and fair opportunity to present the claims. That's what's going on here. The government's procedures are adequate and do not raise any serious constitutional issues because the alien can present any evidence and witnesses and testimony that they desire. I'd like to reserve five minutes for rebuttal. All right. Thank you. Thank you, counsel. Good morning, Your Honors. Michael Kaufman on behalf of the plaintiffs. Your Honors, Cesar Matias was locked up for over four years on a $3,000 bond as a result of the government's bond-setting procedures that do not require consideration of ability to pay or non-monetary alternatives. The Department of Justice itself has recognized that a bail system that lacks consideration of these factors violates the equal protection and due process clauses of the Constitution. All that plaintiffs seek here is the... You mean the amicus brief? Yes. I'm referring, Your Honor, to the amicus brief submitted in the Walker case in the 11th Circuit as well as the statement of interest that they filed in the Varden case in the district court. In both of those materials, the Department of Justice explained that a bail system that lacks consideration of ability to pay and non-monetary alternatives risks the unnecessary detention of people who lack financial resources and violate both due process and the equal protection clause. Now, all that plaintiffs seek here is the federal government's compliance with these fundamental requirements to ensure that no other person is incarcerated for years merely because he is poor. Now, at the outset here, Your Honors, I'd like to begin by clarifying what exactly is at issue in this appeal and reiterate something that Judge Reinhart alluded to, which is the class definition here. By definition, every class member here has been determined by an immigration official not to present a danger to the community and that they are likely to appear at future immigration proceedings. That's what it takes under the regulations to order somebody released on bond. And every class member here has already been ordered released on bond. Either by ICE or the IJ. So the only thing at issue here is determining the appropriate procedures that immigration officials should apply in determining what are the appropriate conditions of release for people that have already been found suitable for release. Now, Your Honors, I would submit that the District Court here did not abuse its discretion in requiring certain fundamental and basic requirements to prevent against detention based on poverty. Now, Your Honors, here today and in their briefing, the government has made a number of arguments against the District Court's order that rest on really egregious mischaracterizations of what it in fact requires. So first, they claim that the order somehow creates a constitutional right to release on bond. Not so. The order is clear that an individual's ability to pay is not the dispositive factor in bond determination. Rather, it requires only that ability to pay must be considered in bond determination. And that's at ER 44. Second, the government claims that the order somehow creates a least burdensome means test. But again here, Your Honor, the order expressly rejects that argument, states that it does not create a least restrictive means test for immigration officials, and cites the Judge Wardlaw's decision in the Rodriguez 3 decision, which found that mere consideration of alternatives is not the same thing as a requirement of a least restrictive means test. Third, Your Honors, they claim that the District Court's approach is inflexible, creates a one-size-fits-all rule. But in fact what it does is ensure individualized decision-making in each non-citizen's case to make sure that the conditions that are set adequately reflect consideration of their ability to pay and the possibility for release on alternative conditions. Fourth, they claim that the District Court's order shifts the burden at immigration bond proceedings. Again here, Your Honor, not so. The decision expressly recognizes that for individuals who get bond hearings under initial bond hearings under 8 U.S.C. 1226A, that they bear the burden of proof to demonstrate that they're not a danger or flight risk that warrants their detention. Every class member here has already met that burden. The only thing we're dealing with here is how immigration officials go about determining the appropriate conditions for their relief. Finally, Your Honor, the government repeatedly makes this claim that plaintiff's counsel somehow veto authority over the procedures that the government will use to implement the District Court's order. I must say I am perplexed by this argument here. All the District Court's order requires is that the parties meet and confer on implementation of the injunctive relief here. That is a common requirement in cases involving injunctive relief, and it's for reasons of judicial economy. Of course we want the parties working out any disputes before an injunction goes to an effect so we don't have problems in the aftermath that the District Court will have to jump in and resolve and possibly require new bond hearings for people who didn't get the right procedures in the first place. So properly considered, Your Honors, I think that the District Court's order is well supported by governing law under the Supreme Court precedent and the Supreme Court. With respect to their constitutional claims, Your Honors, the Supreme Court has made clear that when the government exercises its authority to detain noncitizens in immigration proceedings, it has to do so pursuant to adequate procedural protections that ensure that in each individual case of detention that the government's legitimate interests are being advanced. And the lesson from Bearden and the other cases that Bearden relies on is that it is illegitimate for the government to lock somebody up based on a financial condition when it has available to it alternative conditions that would meet the government's interests but allow the person to gain their freedom. That is the central position that the Department of Justice took in their Walker amicus brief and in their statement of interest in Bearden, and it equally applies here. Now, the government claims that immigration detention is different, that this case somehow involves a plenary power doctrine. Not so, Your Honors. The Supreme Court has been clear in Zadvaitis that the government's detention authority is, quote, subject to important constitutional constraints. And in this case, we are dealing with one of the fundamental constraints on the government's ability to detain. That is, they cannot lock somebody up based on their poverty. And we know this is fundamental because if you look at the wide range of circumstances in which the Supreme Court and the circuit courts have applied this principle, it's applied in the criminal justice punishment context. Well, you don't really have to go that far in this case. I mean, you're not saying that if somebody is indigent that they have to give them bail or an alternative system. All you're asking for is that it be considered. And, you know, I think you have a less difficult burden if you're just saying they have to consider it than if you say you can't lock them up if they can't make bail. That's right, Your Honor, and that's an important clarification. When I say you can't keep someone detained based on their poverty, I'm simply using the formulation that the Department of Justice used in their Walker-Amacris brief. There they explain that when the government uses a financial condition that keeps someone detained but it has alternatives that would allow the person to be released, that is detention based on your poverty. Of course, we have not argued that every person ordered release on bond need be released, only that immigration judges and ICE officials need consider other possibilities where somebody, because of their indigent, isn't able to afford a monetary money bond that's set in their case. And, Your Honor, returning to the fundamental nature of this requirement, it's been applied in the criminal punishment context, and that's in Bearden, cases like Tate v. Short and Williams. It's been applied in the pretrial justice context in bail hearings, which are civil in nature, in cases like Pew v. Rainwater, the Fifth Circuit's decision, and the long line of district court cases that we've cited in our briefing, striking down bail systems that lack consideration of these factors. And it's been applied in other civil detention contexts. For example, the Supreme Court's recent decision in Turner v. Rogers, there the court required consideration of ability to pay before somebody could be subject to detention for civil contempt based on their failure to pay a child support payment. I think what these cases show is that we're dealing with a fundamental principle here of constitutional law, that is that you can't keep somebody locked up on a money bond when you have other conditions available that would allow them to be released. Does 1226D contemplate alternative conditions that might ameliorate the conditions of release? And is that already in there, or is that something new that the district court added? Your Honor, 1226A does provide that non-citizens can be released under what's known as conditional parole. That term has been interpreted to mean that they can be released on alternatives. And of course, Your Honor's decision in Rodriguez III already interpreted 1226A to require consideration at prolonged detention bond hearings conducted under that decision. Now, we are simply asking here for the same requirement to apply for the subset of class members who are getting their bond hearings at the outset of their cases under 1226A. So, Your Honor, I think it's clear that the statute is susceptible to an interpretation, as the district court found, requiring consideration of alternative conditions of release, non-monetary alternatives. And, Your Honor, there's a very good reason why we think it critical that IJs and ICE officials consider alternatives. The record evidence demonstrates that these alternatives are extraordinarily effective at ensuring people's appearance at removal proceedings. We cite, too, in their supplemental excerpts of record, a government accountability office report that found from 2010 to 2013, the government's primary alternative detention program was 95% successful at ensuring that non-citizens appeared for their removal hearings every removal hearing after they were released. And that's consistent from testimony that we cite, too, in the record as well, from the government's witness most knowledgeable about their alternatives program from the Rodriguez case. That witness testified that here in regions in Southern California, they've reached compliance rates close to 100% under that very same alternatives program. Is that program, is that ISAP? What does that stand for? Yeah, that's the Intensive Supervision Appearance Program, and that is operated by a contractor with the federal government. It is their primary alternatives program, and it's the exclusive one used here in the Central District, Your Honor. And I think the record evidence shows that it is extraordinarily effective. It's also consistent with evidence we have from the criminal justice system showing that non-monetary conditions of release can be very effective. And here, Your Honors, I would refer you to the amicus brief submitted by NACDL, which gives an overview of some of the conditions that have proved effective, including some very low-intensity forms of supervision like mailings or phone calls have been proven to be as effective or even more so than release on monetary conditions. Do you know what percentage of the people released on bail are given these alternative procedures? I don't, Your Honor, and that evidence, unfortunately, is not in the record. Do you have any idea what percentage of people released on bail come? I guess it's 99% for an initial hearing and 95% for the final hearing. Do you have any comparable figures for people released on bail? In the immigration context, Your Honor, no. I don't believe the government has that data, or at least it's not contained in that reporting that's in the record here. But again here, the NACDL brief does discuss appearance rates for various forms of release in the criminal justice context, including release on money bond. And again here, I think that evidence shows that a release on non-monetary alternatives can be a highly effective way of ensuring that people show up here. That's why it's so important that immigration officials should be considering the full range of options they have available to them in determining how somebody should be released. Right now in the Central District, there's basically a presumption that money bond is the presumptive form of release. And that's why we have so many people like Cesar Matias, like Xochitl Hernandez, who get locked up on unaffordable bonds because, as the district court found, immigration officials are not considering their ability to pay the money bond and not considering the opportunity to release somebody on alternatives here. Now, Your Honors, before I sit down here, I want to be sure that we spend so much time talking about the merits of plaintiff's claim here. I want to be sure that we touch on the other preliminary injunction factors, namely irreparable harm, balance of hardships, and the public interest, all of which I would submit, Your Honor, tips sharply in the plaintiff's favor here. And that's because we're dealing with a class of individuals in civil proceedings that have been detained, some of them for, like Cesar Matias, for years, counterbalanced against that we have the government's interest here, which is detaining people who its own immigration officials have already determined are suitable for release. And the only impediment to that release is the happenstance that they don't have enough money in their bank accounts to pay off their bonds. That's the only impediment to their release. And, you know, as Judge Wardlaw recognized in her Rodriguez III opinion, immigration detainees are held in prison-like conditions. Those conditions make it extraordinarily hard for them to litigate their removal cases. It's very hard to access counsel when you're detained, and that's why the vast majority of detainees are forced to go without counsel. If you're pro se, being detained makes it very difficult to litigate your removal case. It's hard to get documents to support your claims. It's hard to do the legal research that you need to litigate your case. And that's why I think we see, as the amicus brief that was submitted by retired immigration judges attests to, that, quote, detention itself often determines the outcome of removal proceedings. Now, we also know, Your Honor, that the unnecessary detention of people based on their inability to pay a bond also has severe hardships on their family members and their loved ones. You have families who lose the loss of care and support from the person that's detained. And on the score, Your Honor, I would refer you to the amicus brief that was submitted by the UCI Immigration Law Clinic that details a number of additional people, in addition to Mr. Hernandez and Mr. Matias, who suffered really severe hardships as a result of their detention. For example, there's the case of a single father by the name of Pedro. He's a single father, sole care of seven United States citizen children. He was picked up by ICE, held for over a year on a $5,000 bond that could not be paid because he was the sole breadwinner for the family. Now, he's luckily been reunited with his family, but the children are still suffering severe trauma from that prolonged separation from their father. There's also cases like Donya Morales, who tragically lost her mother when she was detained, and the government, ICE, refused to release her to attend the funeral while she remained detained on an unaffordable bond. And there's cases like Carlos Barrera, whose daughter was all set to go off to community college when her father was picked up and put in removal proceedings, and she decided that she could no longer pursue her academic future, had to get a job, support the family, and help pay down her father's bond. Now, these are just a few, a handful of examples of the hundreds of families that have been separated and torn apart by the government's existing bond procedures. Finally, Your Honor, it's important to recognize that the government and the public as a whole is suffering irreparable harm from the government's maintenance of these illegal policies. It is extraordinarily expensive to lock up somebody in immigration detention. It costs, based on government estimates, approximately $160 a day versus only about $10 or less to release somebody on alternatives. I have a couple questions about Rodriguez v. Jennings. If it is reversed by the Supreme Court, how does that affect this case? You know, Your Honor, it's difficult to speculate at this point, as Your Honor knows better than anybody. There's a whole lot of issues in the case, and I think it could be— Yeah, I agree that they could definitely change the burden of proof and clear and convincing all of those standards without reversing the whole underlying thing. Alternatively, should we, as Justice Alito suggested in oral argument of Rodriguez v. Jennings, or Jennings v. Rodriguez, and I think the Chief Justice said the same thing, just determine the constitutionality of the statute without implying consideration of the ability to pay? Well, Your Honor, the ability to pay issue is not an issue in Rodriguez. No, I realize that. I'm saying, I mean, one articulated approach, and then subsequent briefing was ordered on this, is this statute unconstitutional because it doesn't require consideration of financial ability to pay and therefore it necessarily deprives people, poor people, of their liberty as opposed to wealthy people? I'm sorry, Your Honor, I'm not sure if I'm understanding— Taking your equal protection argument. Yes. Is the statute constitutional under the equal protection clause? Yeah, well, there is no equal protection claim in Rodriguez. No, I'm saying, forget that, I'm saying should we, the analysis, the second round of briefing of Jennings v. Rodriguez, whether they were analyzing whether those criminal detention statutes were constitutional? Yes. Should we be analyzing whether this is constitutional? Well, you know, Your Honor, you can resolve this case on the basis of the statute alone. That's what Judge Bernal found, that the statute can and should be construed in light of the serious constitutional concerns posed by a statute that lacks consideration of ability to pay. And that's precisely what this court did in the United States v. Keith case. That's a case involving the federal parole statute. And there this court construed the federal parole statute to require consideration of ability to pay before the government could reincarcerate somebody due to their inability to pay some financial condition of their relief. So we're simply asking the court here to follow its precedent in Keith. There's no material difference between the federal parole statute and 8 U.S.C. 1226a, the statute at issue here. So I think the court could resolve this case on the basis of the statute alone. I'm not sure if I've answered Your Honor's question. Well, I'm suggesting that the Supreme Court doesn't like the notion of constitutional avoidance. You know, we're not sure what to read. Again, I want to be careful not to speculate too much about this. I'm just suggesting if that's the case, should we be, you know, I don't know. Should we hold this case till Rodriguez, Jennings v. Rodriguez comes down? Well, certainly not, Your Honor. You know, as I was alluding to before, there's a whole lot of ways this case could be resolved, many of which would have no impact whatsoever on this case. And meanwhile, it's probably likely until June that we'll get a decision in that case of the following year. Meanwhile, class members will remain detained unlawfully for that prolonged period of time. So I don't think there's any reason to hold off deciding this case. They've stayed this injunction, right? Yes, the preliminary injunction itself was stayed, although other proceedings are still ongoing. And my final question is the government seems particularly to be chafing about the notion that they have to meet and confer with you. What if we struck that? You know, Your Honor, again, I think this is a pretty banal requirement. I think it makes a lot of sense for judicial economy reasons. If the court agrees that there's something impermissible about that, you know, we can live without it. But we do think it's just a good idea for the parties to try to work out things themselves before presenting issues to the district court to resolve. Nothing about the district court's order changes the fact that it's ultimately going to be the district court that decides how its injunction should be implemented. You know, a meet and confer requirement doesn't change that fundamental structure of these proceedings. Thank you, Your Honors. Unless there are further questions. Counsel. Thank you. Thank you, Your Honors. Okay. With respect to your equal protection inquiry, the question is, is the congressional action rationally related to a legitimate government interest? Here, they'd answer yes. Why doesn't strict scrutiny apply? Oh, because we're dealing with immigration, and that's rational basis review. Not necessarily. I mean, we're talking about a liberty interest, which is fundamental. Well, they have a limited liberty interest because we're talking about 1226A, initial bond determination hearing. There has been no prolonged detention. They have just been taken into custody, and they're going to have their initial bond hearing. No prolonged detention. Congress, in DeMora. What did the standard, did this court say the standard was in Singh? Singh? Singh v. Holder. The standard. The standard for? For the equal protection argument. I think that the standard is you have to see is there a fundamental right implicated? Is it a suspect class? And there's no suspect class. Indigency is not a suspect class. And there's no fundamental right to liberty. Actually, detention is the default. I should tell you, Singh argues that the government should be held to a clear and convincing evidence standard of proof. Given the substantial liberty interest at stake, Singh, for example, has been detained for nearly four years. We hold that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of a bond at a CASIS hearing. Again, that is dealing with prolonged detention, and here that's not the issue. It's initial. No, this is an immigration case. It's an immigration case dealing with prolonged detention where he was detained for years. And here the issue is what standards apply at an initial bond hearing. Because it's a liberty interest. It's a substantial liberty interest at stake. He, for example, has been detained for nearly four years. In this case, they can give you an example also where someone's been held for nearly four years. Matias never appealed to the board. Hernandez demonstrates that appeal to the board is not futile. We're talking about what standard this court said applied in an immigration case where there was a bond at issue. And we said given the substantial liberty interest at stake, we hold that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of a bond. We are not dealing with detention for more than six months. It's less than six months, so there's less of a liberty interest. Matias had never appealed his bond determination to the board. That's why he was detained so long. He never appealed the bond. The case shows that appeal to the board is not futile. Hernandez's appeal was sustained. In this case, the immigration judges determined that money bonds were necessary because they were flight risk and they needed an incentive to motivate the aliens to appear at a future removal hearing. How do you know how much was necessary to motivate the alien? The immigration judges based it on the factors that they heard during the initial bond hearings. With Matias testifying that he worked as a hairstylist, looking at his criminal record and his immigration violations, they were reluctant to set a bond at the minimum or no bond because of his immigration and criminal violations. Likewise with Hernandez. It doesn't have anything to do with whether he has a million dollars or a thousand dollars. Well, he had no home. He had uncles who, you know, didn't appear for his hearing. Based on his testimony, they can discern what his family ties, his community ties, and his resources. You can discern the resources? When he's been, has arrests for solicitation of prostitution. What is your objection to asking and considering what his resources are? What's the objection? I don't understand. Because the alien has the burden to demonstrate. No, no, don't tell me he has a burden. I'm asking you why you object to a rule that says when you consider how much the bond should be, you should consider what his resources are. Doesn't that sound perfectly sane to you? The government's position is that it usurps the immigration judge's discretion. They can already consider any evidence that the alien puts forth. Telling the IJ what to consider usurps the discretion and erodes the discretion. He's diminished by that. Yeah. Okay, that's fine. You don't want the information? Congress has applied rules to aliens that cannot be applied to citizens. All right, counsel. Yes, but never mind. Okay, you're over your time, and we're going to submit this case. Hernandez v. Sessions is submitted.
judges: Reinhardt, Fernandez, Wardlaw